UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ACCEPTANCE INDEMNITY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:08-CV-16 CAN |
| v. | ) |
| | ) |
| SAYMEEDA B. YUDDIN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

**I    INTRODUCTION**

In January, 2007, over the course of several days, Kimberly Walker and her children were confined to the Sleepy Hollow Motel in Elkhart, Indiana, and held against their will by threat or force by Walker's former boyfriend, Jerry White. Eventually White was arrested and convicted of criminal confinement. Walker has since filed a complaint against the motel in state court alleging that the motel employees were negligent and failed to follow proper procedures which resulted in the injuries she and her children suffered as a result of the criminal confinement.

The Plaintiff, Acceptance Indemnity Insurance Company ("Acceptance"), the motel's insurance carrier, filed a declaratory action in this court, alleging that it has no duty to defend or indemnify the motel in the state court action because of an exclusion in the policy. Not surprisingly the motel and Walker contend that the exclusion is not applicable and therefore the policy provides coverage for the alleged tort.

1

Because the material facts are not in dispute and the insurance contract terms are not ambiguous, this court may properly decide whether the exclusion is applicable. For the reasons that follow, this court concludes that the exclusion of coverage provided in the policy is applicable to these facts and that as a result, Acceptance has no duty to defend or indemnify the motel in the state court action.

**II      PROCEDURE**

On June 17, 2009, Acceptance filed a motion for summary judgment, arguing that it was not contractually bound to defend or indemnify the Motel Defendants in the state court action because of an applicable assault and battery exclusion in an insurance policy. On August 14, 2009, Defendants, Sahmeeda B. Yuddin c/o Sleepy Hollow Motel and Zenith Hotels, LLC ("Motel Defendants"),[1] filed a response, arguing that the policy exclusion is not applicable to the facts of this case and Acceptance, therefore, had a duty to defend and indemnify them, in the state court action. On August 24, 2009, Acceptance filed its reply.

On August 17, 2009, the remaining Defendants, Kimberly Nicole Walker and her children, J.D.W., J.D.W., K.N.W., and K.N.W. ("Walker"),[2] filed a cross motion for summary judgment against Acceptance. In her motion, Walker argues that the her injuries and the injuries of her children were the result of negligence rather than an assault and battery. As such, Walker also argues that the policy exclusion is not applicable in this case, and, therefore, Acceptance has a duty to defend and indemnify the Motel Defendants in the state court action. On August 24, 2009, Acceptance filed a response, refuting Walker's assertions and arguing that her injuries are

---

[1] These Defendants are the Defendants in the pending state court action as well.

[2] These Defendants are the Plaintiffs in the pending state court action.

directly related to an ongoing assault and not negligence, thereby implicating the policy exclusion and entitling Acceptance to declaratory relief. On September 9, 2009, Walker filed a reply.

This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

**III      ANALYSIS**

   A.      Facts

The following facts are taken from the parties' briefs and are largely undisputed for the purposes of the motions. On January 18, 2007, Kimberly Walker and her youngest daughter were sitting in Walker's car, parked in front of her home in Elkhart, Indiana. Walker was keeping watch over her home, due to recent harassment by her ex-boyfriend, Jerry White ("White"). While Walker was resting, White shattered the car's windshield, removed Walker from the car and ordered her into the house, where he kept Walker and his daughter for 24 hours.

The next day, January 19, 2007, Walker was able to get away from the house and sought medical attention at a hospital emergency room for her injuries. After her release from the hospital, Walker prepared to flee with her children to Chicago, in order to escape future attacks from White. That same day, Ms. Walker's sister, Pam Walker, along with her fiancé, Lathie Turnage, and their two children arrived at Walker's home to stay with Walker for the weekend.

That night, during the early morning hours of January 20, 2007, White returned to the house with a gun. Immediately upon entering the house, White shot Lathie Turnage in the head, seriously injuring him. White told Walker that he was going to kill her as well and ordered White to sit on the couch. Walker clung to her daughter out of fear that White would harm her

child if she put her down. Meanwhile Lathie Turnage lay bleeding in the front bedroom without assistance. Shortly thereafter, White forced Walker and her children into Pam Walker's car at gunpoint and forced them to drive to the Sleepy Hollow Motel in Elkhart.

White had previously checked into the Sleepy Hollow Motel at least two times earlier in the month under his own name. However, on this occasion, White checked in under the name Tony Brown, to the apparent confusion of the motel clerk who recognized White from White's previous stays. The clerk, however, did not ask for identification from White and did not request information regarding White's car, contrary to motel procedure. Shortly thereafter, an Amber Alert began circulating in the news media regarding the Walker's abduction.

On January 22, 2007, recognizing that his picture had begun circulating in the media, White forced Walker to pay for another night at the motel under White's alias Tony Brown. Walker complied, fearing for the safety of her young children, who were alone in the motel room. The next day, on January 23, 2007, White again forced Walker to pay the clerk but made Walker put on a hat, coat and glasses, as, by the second day, Walker's picture had also began circulating in the media.

On January 23, 2007, police knocked on the motel room door. White ordered Walker to ask who was at the door, in order to afford White additional time to escape. When Walker subsequently opened the door, the police officers told Walker to leave the room. However, because Walker was afraid to leave her children alone in the motel room with White, she did not initially respond to the officers' orders. When Walker finally stepped out of the room, she immediately yelled "my babies are inside," prompting the officers to quickly order Walker's children to safety as well.

4

Shortly thereafter, White was arrested and later convicted of attempted murder and eight counts of criminal confinement. White was sentenced to eighty years for these offenses.

Following this ordeal, Walker filed a suit in Elkhart County, Indiana, individually and on behalf of her children, against the motel and its staff. The complaint in the pending state court case recites that Walker and her children were abducted by force and/or the threat of death or serious bodily injury and taken against their will by White to the Sleepy Hollow Motel. The gravamen of Walker's complaint, however, is that the motel employees were negligent in failing to quickly put a stop to the criminal confinement, assault, battery, and false imprisonment, perpetrated by White. Specifically, Walker alleges that, if the motel staff had followed their own procedures for checking identification at the time of White's check-in and had responded more quickly to local news reports regarding the abduction, Walker and her children would have suffered a shorter confinement and fewer injuries.

During this incident, the motel held an insurance policy issued by Acceptance. This insurance policy had a specific exclusion which removed Acceptance's duty to defend or indemnify any claim against the motel arising out of an assault or battery, regardless of whether damages were incurred by an act or omission of a motel employee, by a guest or by another third party.

B.   Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In

5

determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

    C.    Summary Judgment Motions

Acceptance in its motion for summary judgement argues that the events surrounding Walker's abduction and criminal confinement are excluded from coverage of the insurance policy which specifically excludes any claim arising out of assault and/or battery.[3] As a result, Acceptance seeks a declaratory judgment from this Court that the exclusion is applicable to the

---

[3]

EXCLUSION - ASSAULT AND/OR BATTERY
This Insurance does not apply to:
A.    Any claims arising out of Assault and/or Battery or;
B.    Any act or omission in connection with the prevention of suppression of such acts, whether caused by or at the instigation or direction of you, your employees or volunteers, patrons or any other persons, or
C.    Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing are not covered.
We shall have no obligation to defend you, or any other insured, for any such loss, claim or suit.
See Doc. No. 1-3 at 7.

6

facts of this case and that it owes no duty to defend or indemnify the motel in the state court action.

In response, Walker and the Motel Defendants do not significantly dispute the facts surrounding Walker's abduction, neither do they dispute the terms of the cited policy exclusion. Instead, Walker and the Motel Defendants assert that the assault and battery against Walker was limited to the events occurring at Walker's home. As such, Walker argues that the motel's negligence in not, more quickly, identifying Walker or White and failing to notify the Elkhart police of Walker's whereabouts was the "predominate" cause of her injuries. The Motel Defendants, similarly argue that there is no evidence that an assault and battery occurred at the motel. Therefore, because both Walker and the Motel Defendants argue that the assault and battery was limited to the specific events occurring prior to Walker's arrival at the motel, Walker and the Motel Defendants additionally contend that the policy exclusion is not applicable to Walker's claims against the Motel Defendants in the state court action. Consequently, Walker and the Motel Defendants assert that Acceptance has a duty to defend or indemnify the Motel Defendants in the state court action.

In Indiana, the interpretation and construction of contract provisions is a function for the courts. Klitz v. Klitz, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999). In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the document. Noble Roman's, Inc. v. Pizza Boxes, Inc., 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005). Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. Id. Where the terms of a contract are clear and unambiguous, they are conclusive and a court will not construe the contract or consider extrinsic evidence. Eckart v. Davis, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). A contract is not ambiguous merely because the parties disagree about the proper interpretation of its terms. Arrotin Plastic Materials of Ind. v. Wilmington

7

Paper Corp., 865 N.E.2d 1039, 1041 (Ind. Ct. App. 2007). And indeed, no party is contending that the language of the Acceptance insurance policy exclusion at issue here is ambiguous.

Because the material facts are not in dispute and the language of the insurance contract is clear and unambiguous, this Court considers this a relatively straight forward case. Despite the evidence submitted to establish potential negligence of the motel employees as a potential contributory factor in creating and exacerbating Walker's injuries, such conduct can not be separated from the ongoing assault which underlies the entirety of Walker's four-day abduction.

In Indiana, "[a]n assault is effectuated when one acts intending to cause harmful or offensive contact with the person of the other or an imminent apprehension of such contact." Rivera ex rel. Rivera v. City of Nappanee, 704 N.E.2d 131, 133 (Ind. Ct. App. 1998). See also 3 IND. LAW ENCYCLOPEDIA ASSAULT AND BATTERY § 1; 1 AM. JUR. PROOF OF FACTS 3d § 613 (1988). Civil battery is a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact and a harmful contact with the person of the other directly or indirectly results. Singh v. Lyday, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008). 3 IND. LAW ENCYCLOPEDIA. ASSAULT AND BATTERY § 1.

It is undisputed that the Walker family was kidnaped by White, under threat of deadly force. White provided a clear demonstration of his ability to use deadly force to intimidate and control Walker and her guests, by shooting the fiancé of Walker's sister at the onset of the ordeal. It is further undisputed that this specific act constituted an assault and a battery against White and her guests, in particular Lathie Turnage. What the parties dispute is whether White's subsequent abduction of Walker and her children, forcing Walker and her children from the house and into a four-day captivity at the motel, also constitutes an assault and battery.

Although Walker and the Motel Defendants allege that the subsequent events at the motel did not constitute an assault or battery, this Court considers the undisputed evidence of Walker's

8

deposition testimony in this regard to be persuasive evidence to the contrary. Most significantly, Walker testified that she was, at all times during the ordeal, afraid for her life and was certain that seriously bodily injury was imminent. Specifically, Walker testified that she felt that the threat of death or being shot was impending. In addition, Walker also testified that she did not feel that she could resist White, believing that, if she resisted, White would kill her. Such undisputed evidence establishes that White's actions, even after Walker had been forced from her home, placed Walker in a continuing state of fear, lasting the entirety of the ordeal.[4]

Further, other undisputed evidence establishes that Walker remained in distress and under White's control throughout the ordeal. For instance, the parties do not dispute that Walker complied with White's orders: to pay for the motel room under an alias, to wear disguises to conceal her identity and to avoid looking at cars when walking along the road to a nearby house. In addition, the undisputed evidence reveals that, during her captivity at the motel, Walker secretly indicated her continuing distress to her cousin through an established code word while simultaneously asserting that she was not the victim of a kidnaping, highlighting both her present distress and White's ongoing attempts to manipulate Walker's actions. Finally, the evidence shows that, after being ordered by the police to exit the motel room, Walker reluctantly left the room and responded with notable distress upon doing so, out of fear of leaving her children alone with White in the room. Such undisputed evidence bolsters the conclusion that White's

---

[4] Similarly, although technically a pleading and not asserted as evidence, Walker's own state court complaint belies Walker's assertions on summary judgment that White's actions at the motel did not constitute an assault and battery and that Walker's injuries were the result of Motel Defendants' negligence rather than White's violent criminal actions. Specifically, Walker's complaint asserts, "commencing on or about January 19, 2007, [Walkers] were the victims of an abduction and criminal confinement that was perpetuated by Jerry D. White, who was at all material times herein, armed, dangerous, and threatening [Walkers] with death and serious bodily injury if they attempted to escape from his confinement and control." See Doc. No. 30-2 at 1. In addition, Walker's complaint states, "[d]uring the three nights and four days that [Walkers] were held prisoner in Room No. 1 of the Sleepy Hollow Motel, they were subjected to severe and outrageous conduct that caused them each to suffer from mental anguish and psychological distress because of the criminal conduct of Jerry D. White . . . ." See Doc. No. 30-2 at 3.

9

actions, throughout the abduction, served to place Walker in a state of ongoing fear for her life and the life of her children.

Finally, this Court notes White's subsequent criminal convictions of attempted murder and criminal confinement as evidence that the ordeal can be properly characterized as an ongoing assault against Walker and her children. Under Indiana law, criminal confinement is committed when "a person knowingly or intentionally confines another person without the other person's consent or removes another person by . . . force or threat of force from one place to another." I.C. § 34-42-3-3 (internal punctuation omitted). Further, such an offense is considered a Class B felony when it is "committed while armed with a deadly weapon." Id. Four of White's eight convictions for criminal confinement were classified as Class B felonies. This Court considers these violent crimes, determined beyond a reasonable doubt to have been committed by White against Walker and her children, to be a continuing assault and battery. Specifically, it has been adjudicated that White effectuated his confinement against Walker and her children through "threat of force," which is highly similar to the elements of assault, in which a person intends to place a person in imminent apprehension of harmful or offensive contact. See Rivera ex rel. Rivera v. City of Nappanee

Based upon the convincing and uncontradicted evidence that at all times during her abduction Walker was afraid for her life and for the lives of her children, and given White's subsequent conviction for eight counts of criminal confinement, this Court concludes that Acceptance has submitted substantial evidence to show that the assault and battery exclusion is clearly applicable in this case. Even if Walker could establish both that the Motel Defendants were negligent in failing to follow the motel's identification procedures and that such negligence

10

had a causal role in creating or exacerbating Walker's injuries, Walker can not escape the fact that her captivity at her home and at the motel was the result, at least in part, of an ongoing and violent assault by White. Having failed to dispute the facts discussed by this Court, this Court concludes that Walker and the Motel Defendants have failed to present sufficient evidence to show a genuine issue of material fact as to his issue, such that a rational trier of fact could find to the contrary.

Therefore, because the plain language of the policy unambiguously excludes coverage for injuries stemming from an assault and battery, Acceptance can not be required, under the applicable insurance contract, to either defend or indemnify the Motel Defendants in the pending state court action. Walker might still be permitted to proceed against the Motel Defendants in the state court action on its negligence claim, as nothing in this Court's decision affects the continuing viability of that claim. However, this Court concludes that Acceptance is not required to participate on the Motel Defendants' behalf and is not required to contribute policy proceeds to Walker in the event of a state court judgment in her favor.

## IV. CONCLUSION

The events surrounding the armed abduction of Walker and her children are undeniably tragic and reprehensible. However, tragic circumstances do not permit this Court to ignore clearly applicable contract provisions. Instead, this Court finds that the undisputed evidence reveals that the events surrounding Walker's abduction and confinement at the motel constitute an ongoing assault. Consequently, even assuming that Walker's injuries may have been exacerbated by subsequent negligence of the Motel Defendants, Walker can not escape the fact that Walker's injuries are caused, at least in part, by an egregious and violent four-day assault,

11

committed against her and her children by White.  As such, this Court concludes that Walker's alleged damages fall well within the assault and battery exclusion of the applicable insurance contract, thereby relieving Acceptance from any duty to defend or indemnify the Motel Defendants in the pending state court action.  As such, this Court now **GRANTS** Acceptance's motion for summary judgment.  [Doc. No. 30].  In addition, this Court now **DENIES** Walker's cross motion for summary judgment. [Doc. No. 45].  The Clerk is instructed to enter judgment in Acceptance's favor and term this case.

**SO ORDERED**.

Dated this 9th Day of November, 2009.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge